## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **BRIAN LOFTUS, individually and on behalf of a class of persons similarly situated, ANA L. NELSON, individually and on behalf of a class of persons similarly situated, BRENDA REGES, individually and on behalf of a class of persons similarly situated, and, SARAH WILDING, individually and on behalf of a class of persons similarly situated,**      Plaintiffs | : : : : : : : : : : : |
| v. | :    **C.A. No.** |
| | : |
| **CRACKER BARREL OLD COUNTRY STORE, INC., and JOHN DOE COMPANIES, 1 through 10, inclusive,**      Defendants | : : : : |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I.     Introduction

1.      This is a class and collective action brought by the Plaintiffs, individually and on behalf of all others similarly situated, against the Defendants seeking compensatory and liquidated damages, as well as attorneys' fees, litigation expenses and other equitable relief, arising out of Defendants' unlawful failure to properly compensate the Plaintiffs and other similarly situated individuals in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. and the Rhode Island Minimum Wage Act, R.I.G.L. §28-12-1, *et seq*. ("RIMWA"). The Plaintiffs also assert individual claims against the Defendants due to being subjected to workplace retaliation in violation of the FLSA, the Rhode Island Wage Act, R.I.G.L. §28-14-1, *et seq*. ("RIWA"), Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I.G.L. §28-50-1, *et seq*., and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I.G.L. §42-112-1, *et seq*.

### II.     Parties

2.     Plaintiff, Brian Loftus ("Loftus"), is a resident of the Town of West Warwick, County of Kent, State of Rhode Island.  During all relevant time periods, Plaintiff Loftus was employed by the Defendants, and was thus an employee within the meaning of 29 U.S.C. §203(e)(1) of the FLSA and R.I.G.L. §28-12-2(4) of the RIMWA.  Plaintiff Loftus is a member of the class of persons as defined below and seeks to be certified as a class representative of the class. Plaintiff Loftus also asserts individual legal claims against the Defendants in this matter.

3.     Plaintiff, Ana L. Nelson ("Nelson"), is a resident of the Town of Coventry, County of Ken, State of Rhode Island.  During all relevant time periods, Plaintiff Nelson was employed by the Defendants, and was thus an employee within the meaning of 29 U.S.C. §203(e)(1) of the FLSA and R.I.G.L. §28-12-2(4) of the RIMWA.  Plaintiff Nelson is a member of the class of persons as defined below and seeks to be certified as a class representative of the class.  Plaintiff Nelson also asserts individual legal claims against the Defendants in this matter.

4.     Plaintiff, Brenda Reges ("Reges"), is a resident of the Town of Killingly, County of Windham, State of Connecticut.  During all relevant time periods, Plaintiff Reges was employed by the Defendants, and was thus an employee within the meaning of 29 U.S.C. §203(e)(1) of the FLSA and R.I.G.L. §28-12-2(4) of the RIMWA.  Plaintiff Reges is a member of the class of persons as defined below and seeks to be certified as a class representative of the class.  Plaintiff Reges also asserts individual legal claims against the Defendants in this matter.

5.     Plaintiff, Sarah Wilding ("Wilding"), is a resident of the Town of West Warwick, County of Kent, State of Rhode Island.  During all relevant time periods, Plaintiff Wilding was employed by the Defendants, and was thus an employee within the meaning of 29 U.S.C. §203(e)(1) of the FLSA and R.I.G.L. §28-12-2(4) of the RIMWA.  Plaintiff Wilding is a member

of the class of persons as defined below and seeks to be certified as a class representative of the class.  Plaintiff Wilding also asserts individual legal claims against the Defendants in this matter.

6.     Defendant CRACKER BARREL OLD COUNTRY STORE, INC. is a Tennessee corporation and maintains a principal place of business in Lebanon, Tennessee.  In addition, Defendant CRACKER BARREL OLD COUNTRY STORE, INC. conducts business within the State of Rhode Island and employs individuals in the State of Rhode Island.

7.     On information and belief, John Doe Companies, 1 through 10 inclusive, are separate business entities, including, but not limited to, corporations, limited liability companies, firms, partnerships, associations, joint stock companies, subsidiaries, agents, and/or alter egos of Defendant CRACKER BARREL OLD COUNTRY STORE, INC. or are associated with Defendant CRACKER BARREL OLD COUNTRY STORE, INC. in some capacity.[1]  In addition, Defendant John Doe Companies, 1 through 10 inclusive, are registered with, conduct business in, and/or employ individuals in the State of Rhode Island.

8.     That, unless otherwise specifically noted, Defendants CRACKER BARREL OLD COUNTRY STORE, INC. and/or John Doe Companies, 1 through 10, inclusive, are collectively referred to hereinafter as "Defendants" or "Cracker Barrel."

9.     At all relevant times, the Defendants were engaged in the stream of interstate commerce, and were employers of the Plaintiffs and other similarly situated individuals within the meaning of 29 U.S.C. §203(d); *see also Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir. 1991), *and cases cited therein*.

10.     The Defendants are, and at all times hereinafter mentioned were, engaged in related activities performed through unified operation or common control for a common business purpose,

---

[1]     The Plaintiffs will amend this Complaint to set forth the names of these unknown Defendant entities when ascertained.

and are, and at all times hereinafter mentioned were, an enterprise with the meaning of 29 U.S.C. 203(r).

11.   At all times hereinafter mentioned, Defendant Cracker Barrel employed the Plaintiffs and other similarly situated individuals in certain activities of said Defendant enterprises, including employees handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce.

12.   Said Defendant enterprises, at all times hereinafter mentioned, had annual gross volume of sales made or business done in the amount of not less than $500,000.00.  Therefore, the Plaintiffs and other similarly situated employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. 203(s).

13.   The Plaintiffs allege, on behalf of themselves and all similarly situated employees hired by and employed by Defendant Cracker Barrel in the State of Rhode Island, that Defendant Cracker Barrel unlawfully failed and refused to provide the Plaintiffs and members of the Class proper wages for all hours worked.

### III.   Jurisdiction

14.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1367, 2201 and 2202 and 29 U.S.C. §216(b).

### IV.   Venue

15.   Venue is proper in this Court insofar as a substantial part of the events or omissions giving rise to the claim occurred in the District of Rhode Island and Defendants are doing business in Rhode Island and therefore are deemed to reside in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. §1391.

### V.   Defendant Cracker Barrel's Wrongful Conduct Relates to Rhode Island

16.     Defendant Cracker Barrel owns, operates, controls and/or maintains a restaurant location in the State of Rhode Island located at 825 Centre of New England, Coventry, Rhode Island 02816 ("Coventry location").

17.     The conduct and practices on which the claims of the Plaintiffs and the putative class were based and the transactions underlying such claims were conceived, formulated, approved, performed and disseminated in and from the State of Rhode Island.  Based on the following facts, among others, the Defendants' practices directly and indirectly affect the citizens of Rhode Island and thus the State of Rhode Island has the most significant relationship to the conduct, claims, and events at issue:

a.     Defendant Cracker Barrel conducts business in the State of Rhode Island and maintains a restaurant location in Coventry, Rhode Island;

b.     Defendant Cracker Barrel is registered with the State of Rhode Island to conduct business in the State;

c.     Defendant Cracker Barrel provides services to citizens of the State of Rhode Island;

d.     Defendant Cracker Barrel employs citizens of the State of Rhode Island;

e.     Defendant Cracker Barrel's improper wage practices are formulated and directed in Rhode Island.  On information and belief, Defendant Cracker Barrel's employees, who likely determined and dictated the unlawful pay practices complained of herein, were employed in the State of Rhode Island at Defendant Cracker Barrel's Coventry location; and,

f.     the Plaintiffs and other similarly situated employees worked in the State of Rhode Island.

**VI.     Factual Allegations Relating to Plaintiff Loftus**

**Tip Credit Violation**

18.     In March, 2006, Plaintiff Loftus was hired by Defendant Cracker Barrel as a full-time server at the Coventry location.

19.     As a full-time employee, Plaintiff Loftus worked approximately forty (40) hours per week.

20.     Throughout his employment, Plaintiff Loftus was compensated by Defendant Cracker Barrel at a sub-minimum, tip-credit wage.

21.     Throughout his employment, Plaintiff Loftus was compensated on an hourly basis at a rate between $2.89/hour and $3.89/hour plus gratuities.

22.     Throughout his employment, Plaintiff Loftus was a "tipped employee" and treated as such by Defendant Cracker Barrel under the FLSA and the RIMWA.  29 U.S.C. § 203(t); *see also Solis v. Lorraine Enterprises*, 907 F. Supp. 2d 186, 190 (D.P.R. 2012), *aff'd sub nom. Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23 (1st Cir. 2014).

23.     While Plaintiff Loftus was employed at Defendant Cracker Barrel, Plaintiff Loftus was required to perform certain non-tipped duties, including, but not limited to, wiping down chairs and tables, removing gum from underneath tables, prep cooking food items like salads and desserts, washing dishes, emptying/filling/sanitizing ice machines and ice wells, washing/wiping down silverware, rolling silverware, filling salt and pepper shakers, organizing sugar packets on tables, cleaning soda machines and coffee and tea urns, cleaning kitchen racks, wrapping dinner plates, pitchers, and other service items in the kitchen, and putting away food items such as salads dressings.

24.     These non-tipped duties were commonly referred to as "side work" or "closing work."

25.     These non-tipped duties were unrelated to the duties performed by Plaintiff Loftus in connection with his tipped occupation as a server.

26.     In addition, these non-tipped duties were not performed contemporaneously with direct customer service duties performed by Plaintiff Loftus or for a reasonable time immediately before or after performance of direct customer service duties performed by him.

27.     Defendant Cracker Barrel required Plaintiff Loftus to perform non-tipped duties before, during, and after customers were present at the Coventry location.

28.     During each work shift, at least one (1) employee was scheduled to be a so-called "closer" which required such employees to remain at the restaurant at least between 1 and 1 ½ hours after the Coventry location closed to customers and perform non-tipped duties as detailed above.

29.     On several occasions during his employment, Plaintiff Loftus was the "closer" for his work shift and performed non-tipped duties as the "closer."

30.      Defendant Cracker Barrel required Plaintiff Loftus to perform non-tipped duties and only compensated him for such work at the sub-minimum hourly rate between $2.89/hour and $3.89/hour.

31.      The FLSA and the RIMWA require employers to pay their employees at the minimum wage for all hours worked. 29 U.S.C. §206(a); R.I.G.L. §28-12-3.

32.     Throughout Plaintiff Loftus' employment, Defendant Cracker Barrel failed to pay Plaintiff Loftus and other similarly situated employees at the minimum wage for all non-tipped duties performed as required by the FLSA and the RIMWA.

## Failure to Pay For All Hours Worked

33.    During his employment, Plaintiff Loftus worked scheduled shifts throughout various work weeks.

34.    On several occasions during these shifts, Plaintiff Loftus and other similarly situated employees performed work after the end of their scheduled shifts.

35.    For example, despite that Plaintiff Loftus' shift was scheduled to end at 2:00 p.m., he continued to perform work at Defendant Cracker Barrel until 3:00 p.m.

36.    This occurred between 1-2 shifts per week.

37.    Defendant Cracker Barrel utilizes a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work.

38.    During these shifts when Plaintiff Loftus and other similarly situated employees performed tipped and non-tipped work after the end of their scheduled shifts, the shift managers would clock them out of work at the end of their scheduled shifts instead of the actual time they stopped working.

39.    Accordingly, Plaintiff Loftus and other similarly situated employees were not fully compensated for all hours worked.

40.    In sum, Defendant Cracker Barrel's policy, procedure, and practice of clocking out employees prior to the time they stopped performing work resulted in the failure to compensate its employees properly for all the time they have actually worked, including overtime hours.

41.    Defendant Cracker Barrel's failure to pay this unpaid time has resulted in Plaintiff and other similarly situated employees being regularly denied proper compensation under the FLSA and the RIMWA.

42.    Throughout Plaintiff Loftus' employment as a server, he was paid a sub-minimum wage for every hour worked.  Thus, during each workweek in which Defendant Cracker Barrel did

8

not pay him for all hours worked due to being clocked out early, Plaintiff Loftus' regular rate of pay fell below the requisite federal minimum wage and the requisite Rhode Island state minimum wage. Because the amount Plaintiff Loftus was paid during each of those workweeks divided by the number of hours he actually worked resulted in an amount less than the statutory requirement, Defendant Cracker Barrel violated the minimum wage requirements.

43.     During those workweeks and others, Defendant Cracker Barrel's practice of clocking employees out early caused Plaintiff Loftus and other similarly situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over forty (40) in a single workweek).

## **Wrongful Termination**

44.     On or about March 14, 2020, Plaintiff Loftus was furloughed from his position at Defendant Cracker Barrel due to the COVID-19 pandemic.

45.     In May, 2020, Plaintiff Loftus was contacted by Sandy Rush, his manager at the Coventry location.

46.     During this conversation, Plaintiff Loftus was told that Defendant Cracker Barrel was seeking employees to return to work at the Coventry location.

47.     Plaintiff Loftus was told that, upon his return to work, he was expected to prepare and cook food, perform all host/hostess duties, wash dishes and handle all take-out orders in addition to performing his regular server duties and any "side work" or "closing work."

48.     Plaintiff Loftus was told by his manager that Defendant Cracker Barrel was looking for "team players" to perform all of this non-tipped work.

49.     Plaintiff Loftus asked his manager about being properly compensated for this additional non-tipped work and was told that he would only be paid at the sub-minimum, tip-credit hourly rate for all work performed.

50.     Plaintiff Loftus objected to being required to perform non-tipped duties at the sub-minimum, tip-credit hourly rate.

51.     As a result, in May, 2020, Plaintiff Loftus was precluded from accessing Defendant Cracker Barrel's employee portal and thereafter terminated.

52.     Plaintiff Loftus was terminated because he reported to his employer and supervisor an unlawful pay practice in violation of the FLSA and RIMWA as well as related federal and state regulations and rules which Plaintiff Loftus knew or reasonably believed was about to occur and/or refused to violate or assist in violating the FLSA and RIMWA as well as related federal and state regulations and rules.

53.      By terminating Plaintiff Loftus, Defendant Cracker Barrel discriminated and retaliated against Plaintiff Loftus in violation of the FLSA, the RIWA and the RIWPA.

54.     Defendants' unlawful actions and/or omissions are in violation of the FLSA, the RIMWA, the RIWA, and the RIWPA, and were motivated by malice and ill will toward Plaintiff Loftus and other similarly situated employees, and Defendants' actions were taken with reckless and callous indifference to the statutorily protected rights of Plaintiff Loftus and other similarly-situated employees.

55.     As a proximate result of Defendant Cracker Barrel's unlawful acts and/or omissions, including, but not limited to, those described herein, Plaintiff Loftus and other similarly situated employees have suffered and will continue to suffer loss of income, costs incurred due to legal expenses, and other great harm.

## VII.   Factual Allegations Relating to Plaintiff Nelson

### Tip Credit Violation

56.     In 1996, Plaintiff Nelson was hired by Defendant Cracker Barrel as a full-time server at the Coventry location.

57.     As a full-time employee, Plaintiff Nelson worked approximately forty (40) hours per week.

58.     Throughout her employment, Plaintiff Nelson was compensated by Defendant Cracker Barrel at a sub-minimum, tip-credit wage.

59.     Throughout her employment, Plaintiff Nelson was compensated on an hourly basis at a rate between $2.89/hour and $3.89/hour plus gratuities.

60.     Throughout her employment, Plaintiff Nelson was a "tipped employee" and treated as such by Defendant Cracker Barrel under the FLSA and the RIMWA.  29 U.S.C. § 203(t); *see also Solis v. Lorraine Enterprises*, 907 F. Supp. 2d 186, 190 (D.P.R. 2012), *aff'd sub nom. Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23 (1st Cir. 2014).

61.     While Plaintiff Nelson was employed at Defendant Cracker Barrel, Plaintiff Nelson was required to perform certain non-tipped duties, including, but not limited to, wiping down chairs and tables, removing gum from underneath tables, prep cooking for food items like salads and desserts, washing dishes, emptying/filling/sanitizing ice machines and ice wells, washing/wiping down silverware, rolling silverware, filling salt and pepper shakers, clearing dishes from tables, putting away dishes, silverware, and glassware in the kitchen, organizing sugar packets on tables, cleaning soda machines and coffee and tea urns, cleaning kitchen racks, wrapping dinner plates, pitchers, and other service items in the kitchen, and putting away food items such as salad dressings.

62.     These non-tipped duties were commonly referred to as "side work" or "closing work."

63.     These non-tipped duties were unrelated to the duties performed by Plaintiff Nelson in connection with her tipped occupation as a server.

64.     In addition, these non-tipped duties were not performed contemporaneously with direct customer service duties performed by Plaintiff Nelson or for a reasonable time immediately before or after performance of direct customer service duties performed by her.

65.     Defendant Cracker Barrel required Plaintiff Nelson to perform non-tipped duties before, during, and after customers were present at the Coventry location.

66.     During each work shift, at least one (1) employee was scheduled to be a so-called "closer," which required such employees to remain at the restaurant at least between 1 and 1 ½ hours after the Coventry location closed to customers and perform non-tipped duties as detailed above.

67.     On several occasions during her employment, Plaintiff Nelson was the "closer" for her work shift and performed non-tipped duties as the "closer."

68.      Defendant Cracker Barrel required Plaintiff Nelson to perform non-tipped duties and only compensated her for such work at the sub-minimum hourly rate between $2.89/hour and $3.89/hour.

69.      The FLSA and the RIMWA require employers to pay their employees at the minimum wage for all hours worked. 29 U.S.C. §206(a); R.I.G.L. §28-12-3.

70.     Throughout Plaintiff Nelson's employment, Defendant Cracker Barrel failed to pay Plaintiff Nelson and other similarly situated employees at the minimum wage for all non-tipped duties performed as required by the FLSA and the RIMWA.

**Failure to Pay For All Hours Worked**

71.     During her employment, Plaintiff Nelson worked scheduled shifts throughout various work weeks.

72.     On several occasions during these shifts, Plaintiff Nelson and other similarly situated employees performed work after the end of their scheduled shifts.

73.     For example, despite the fact that Plaintiff Nelson's shift was scheduled to end at 2:00 p.m., she continued to perform work at Defendant Cracker Barrel until 3:00 p.m.

74.     This occurred between 1-2 shifts per week.

75.     Defendant Cracker Barrel utilizes a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work.

76.     During these shifts when Plaintiff Nelson and other similarly situated employees performed tipped and non-tipped work after the end of their scheduled shifts, the shift managers would clock them out of work at the end of their scheduled shifts instead of the actual time they stopped working.

77.     Accordingly, Plaintiff Nelson and other similarly situated employees were not fully compensated for all hours worked.

78.     In sum, Defendant Cracker Barrel's policy, procedure, and practice of clocking out employees prior to the time they stopped performing work resulted in the failure to compensate its employees properly for all the time they have actually worked, including overtime hours.

79.     Defendant Cracker Barrel's failure to pay this unpaid time has resulted in Plaintiff Nelson and other similarly situated employees being regularly denied proper compensation under the FLSA and the RIMWA.

80.     Throughout Plaintiff Nelson's employment as a server, she was paid a sub-minimum wage for every hour worked.  Thus, during each workweek in which Defendant Cracker Barrel did not pay her for all hours worked due to being clocked out early, Plaintiff Nelson's regular rate of pay fell below the requisite federal minimum wage and the requisite Rhode Island state minimum wage.  Because the amount Plaintiff Nelson was paid during each of those workweeks divided by the number of hours she actually worked resulted in an amount less than the statutory requirement, Defendant Cracker Barrel violated the minimum wage requirements.

81.     During those workweeks and others, Defendant Cracker Barrel's practice of clocking employees out early caused Plaintiff Nelson and other similarly situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over forty (40) in a single workweek).

**<u>Workplace Discrimination/Wrongful Termination</u>**

82.     On or about March 14, 2020, Plaintiff Nelson was furloughed from her position at Defendant Cracker Barrel due to the COVID-19 pandemic.

83.     In July, 2020, Plaintiff Nelson was contacted by Sandy Rush, her manager at the Coventry location.

84.     During this conversation, Plaintiff Nelson was told that Defendant Cracker Barrel was seeking employees to return to work at the Coventry location.

85.     Plaintiff Nelson was told that, upon her return to work, she was expected to prepare and cook food, perform all host/hostess duties, wash dishes and handle all take-out orders in addition to performing his regular server duties and any "side work" or "closing work."

86.     Ms. Rush told Plaintiff Nelson that she would only be paid at the sub-minimum, tip-credit hourly rate for all work performed.

87.     Plaintiff Nelson refused to return to work under these working conditions.

88.     In addition, Plaintiff Nelson informed Ms. Rush that she had underlying medical conditions, including diabetes and kidney disease, that may prevent her from being able to return to work at that time due to the COVID-19 pandemic.

89.     Thus, at all relevant times, Defendant Cracker Barrel was aware that Plaintiff Nelson suffered from disabilities or regarded Plaintiff Nelson as being disabled.

90.     During this conversation with Ms. Rush, Plaintiff Nelson informed Ms. Rush that she would speak with her treating physician about her ability to return to work.

91.     In August, 2020, Plaintiff Nelson conferred with her treating physician, Brian Liu, M.D., who indicated to Plaintiff Nelson that, given her present medical conditions, she was at a high risk of medical decline if she contracted the COVID-19 virus.

92.     On or about August 24, 2020, Plaintiff Nelson contacted Scott McShane, the General Manager of the Coventry location.

93.     Plaintiff Nelson informed Mr. McShane that, due to her medical conditions, she was unable to return to work at that time.

94.     In response, Mr. McShane informed Plaintiff Nelson that she was already "removed from the system" as of August 19, 2020.

95.     Following this conversation with Mr. McShane, the Plaintiff contacted Defendant Cracker Barrel's corporate employee hotline and was informed that her employment status was "terminated" as of August 19, 2020.

96.     Defendant Cracker Barrel failed and/or refused to engage in an open and ongoing dialogue with Plaintiff Nelson to determine a reasonable workplace accommodation.

97.     As a result, Defendants failed and/or refused to provide the Plaintiff a reasonable accommodation for her disabilities in the form of a leave of absence.

98.     Plaintiff Nelson was terminated because she refused to violate or assist in violating the FLSA and RIMWA as well as related federal and state regulations and rules.

99.     Plaintiff Nelson was terminated due to her disabilities or perceived disabilities and/or because of her need for a reasonable accommodation in the form of a leave of absence.

100.    By terminating Plaintiff Nelson, Defendant Cracker Barrel discriminated and retaliated against Plaintiff Nelson in violation of the RIWPA and the RICRA.

101.    Defendants' unlawful actions and/or omissions are in violation of the FLSA, the RIMWA, the RIWA, the RIWPA, and the RICRA, and were motivated by malice and ill will toward Plaintiff Nelson and other similarly situated employees, and Defendants' actions were taken with reckless and callous indifference to the statutorily protected rights of Plaintiff Nelson and other similarly situated employees.

102.    As a proximate result of Defendant Cracker Barrel's unlawful acts and/or omissions, including, but not limited to, those described herein, Plaintiff Nelson and other similarly situated employees have suffered and will continue to suffer loss of income, costs incurred due to legal expenses, and other great harm.

**VIII.   <u>Factual Allegations Relating to Plaintiff Reges</u>**

**<u>Tip Credit Violation</u>**

103.    Between March, 2006 and August, 2009, Plaintiff Reges was employed at Defendant Cracker Barrel's Jackson, Michigan location.

104.    In August, 2009, Plaintiff Reges began working as a full-time server at the Coventry location.

105.    Beginning in or about 2017, Plaintiff Reges worked as a part-time server and worked approximately twenty (20) to twenty-four (24) hours per week.

106.    Throughout her employment, Plaintiff Reges was compensated by Defendant Cracker Barrel at a sub-minimum, tip-credit wage.

107.    Throughout her employment, Plaintiff Reges was compensated on an hourly basis at a rate between $2.89/hour and $3.89/hour plus gratuities.

108.    Throughout her employment, Plaintiff Reges was a "tipped employee" and treated as such by Defendant Cracker Barrel under the FLSA and the RIMWA.  29 U.S.C. § 203(t); *see also Solis v. Lorraine Enterprises*, 907 F. Supp. 2d 186, 190 (D.P.R. 2012), *aff'd sub nom. Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23 (1st Cir. 2014).

109.    While Plaintiff Reges was employed at Defendant Cracker Barrel, Plaintiff Reges was required to perform certain non-tipped duties, including, but not limited to, wiping down chairs and tables, wiping down work stations, prep cooking food items like salads and desserts, cleaning the prep area, washing dishes, emptying/filling/sanitizing ice machines and ice wells, washing/wiping down silverware, rolling silverware, changing sanitizing buckets, washing walls, cleaning inside of kitchen walk-in coolers, filling salt and pepper shakers, clearing dishes from tables, putting away dishes, silverware, and glassware in the kitchen, organizing sugar packets on tables, cleaning soda machines and coffee and tea urns, cleaning kitchen racks, wrapping dinner plates, pitchers, and other service items in the kitchen, and putting away food items such as salad dressings.

110.    These non-tipped duties were commonly referred to as "side work" or "closing work."

111.    These non-tipped duties were unrelated to the duties performed by Plaintiff Reges in connection with her tipped occupation as a server.

112.    In addition, these non-tipped duties were not performed contemporaneously with direct customer service duties performed by Plaintiff Reges or for a reasonable time immediately before or after performance of direct customer service duties performed by her.

113.    Defendant Cracker Barrel required Plaintiff Reges to perform non-tipped duties before, during, and after customers were present at the Coventry location.

114.    During each work shift, at least one (1) employee was scheduled to be a so-called "closer," which required such employees to remain at the restaurant at least between 1 and 1 ½ hours after the Coventry location closed to customers and perform non-tipped duties as detailed above.

115.    On several occasions during her employment, Plaintiff Reges was the "closer" for her work shift and performed non-tipped duties as the "closer."

116.     Defendant Cracker Barrel required Plaintiff Reges to perform non-tipped duties and only compensated her for such work at the sub-minimum hourly rate between $2.89/hour and $3.89/hour.

117.     The FLSA and the RIMWA require employers to pay their employees at the minimum wage for all hours worked. 29 U.S.C. §206(a); R.I.G.L. §28-12-3.

118.    Throughout Plaintiff Reges' employment, Defendant Cracker Barrel failed to pay Plaintiff Reges and other similarly situated employees at the minimum wage for all non-tipped duties performed as required by the FLSA and the RIMWA.

## Failure to Pay For All Hours Worked

119.    During her employment, Plaintiff Reges worked scheduled shifts throughout various work weeks.

120.    On several occasions during these shifts, Plaintiff Reges and other similarly situated employees performed work after the end of their scheduled shifts.

121.    For example, despite that Plaintiff Reges' shift was scheduled to end at 2:00 p.m., she continued to perform work at Defendant Cracker Barrel until 3:00 p.m.

122.    This occurred between 1-2 shifts per week.

123.    Defendant Cracker Barrel utilizes a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work.

124.    During these shifts when Plaintiff Reges and other similarly situated employees performed tipped and non-tipped worked after the end of their scheduled shifts, the shift managers would clock them out of work at the end of their scheduled shifts instead of the actual time they stopped working.

125.    Accordingly, Plaintiff Reges and other similarly situated employees were not fully compensated for all hours worked.

126.    In sum, Defendant Cracker Barrel's time-clock policy, procedure, and practice of clocking out employees prior to the time they stopped performing work resulted in the failure to compensate its employees properly for all the time they actually worked, including overtime hours.

127.    Defendant Cracker Barrel's failure to pay this unpaid time has resulted in Plaintiff Reges and other similarly situated employees being regularly denied proper compensation under the FLSA and the RIMWA.

128.    Throughout Plaintiff Reges' employment as a server, she was paid a sub-minimum wage for every hour worked.  Thus, during each workweek in which Defendant Cracker Barrel did

not pay her for all hours worked due to being clocked out early, Plaintiff Reges' regular rate of pay fell below the requisite federal minimum wage and the requisite Rhode Island state minimum wage. Because the amount Plaintiff Reges was paid during each of those workweeks divided by the number of hours she actually worked resulted in an amount less than the statutory requirement, Defendant Cracker Barrel violated the minimum wage requirements.

129.    During those workweeks and others, Defendant Cracker Barrel's practice of clocking employees out early caused Plaintiff Reges and other similarly situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over forty (40) in a single workweek).

### Workplace Discrimination/Wrongful Termination

130.    On or about March 1, 2020, Plaintiff Reges was furloughed from her position at Defendant Cracker Barrel due to the COVID-19 pandemic.

131.    On or about May 5, 2020, Plaintiff Reges was contacted Scott McShane, the General Manager of the Coventry location.

132.    During this conversation, Plaintiff Reges was told that Defendant Cracker Barrel was seeking employees to return to work at the Coventry location.

133.    Mr. McShane told Plaintiff Reges that he needed her to return to work even though the Coventry location would not be open to serve seated customers.

134.    Plaintiff Reges was told that, upon her return to work, she was expected to prepare and cook food, clean the restaurant, paint, scrub floors at the end of each night, wash dishes, perform cashier duties, and handle all take-out orders.

135.    Plaintiff Reges asked Mr. McShane about her compensation.

136.    In response, Mr. McShane told Plaintiff Reges that she would only be paid at the sub-minimum, tip-credit hourly rate for all work performed, despite that she would not be performing any server duties.

137.    Plaintiff Reges refused to return to work under these working conditions.

138.    Mr. McShane stated to the Plaintiff that she needs to be a "team player."

139.    In July, 2020, Plaintiff Reges informed Jen,[2] her manager at the Coventry location, that, due to her underlying medical conditions, including Chronic Obstructive Pulmonary Disease (COPD), she was at a high risk for severe illness if she contracted the COVID-19 virus.

140.    In late July or early August, 2020, Plaintiff Regis hand-delivered a medical note to Jen and Kathy Santiago, another manager at the Coventry location.  The medical note was from Plaintiff Reges' treating physician and stated that Plaintiff Reges' COPD condition placed her at a high risk for illness.

141.    Plaintiff Reges informed Defendant Cracker Barrel that she was unable to return to work at that time.

142.    On August 19, 2020, Plaintiff Reges was terminated from her position at Defendant Cracker Barrel.

143.    Defendant Cracker Barrel failed and/or refused to engage in an open and ongoing dialogue with Plaintiff Reges to determine a reasonable workplace accommodation.

144.    As a result, Defendants failed and/or refused to provide the Plaintiff a reasonable accommodation for her disability in the form of a leave of absence.

145.    Plaintiff Reges was terminated because she reported to her employer and supervisor an unlawful pay practice in violation of the FLSA and RIMWA as well as related federal and state

---

[2] The Plaintiff is unable to recall Jen's last name at this time.

regulations and rules which Plaintiff Reges knew or reasonably believed was about to occur and/or refused to violate or assist in violating the FLSA and RIMWA as well as related federal and state regulations and rules.

146.    Plaintiff Reges was terminated due to her disability or perceived disability and/or because of her need for a reasonable accommodation in the form of a leave of absence.

147.    By terminating Plaintiff Reges, Defendant Cracker Barrel discriminated and retaliated against Plaintiff Loftus in violation of the FLSA, the RIWA, the RIWPA, and the RICRA.

148.    The Defendants' unlawful actions and/or omissions are in violation of the FLSA, the RIMWA, the RIWA, the RIWPA, and the RICRA and were motivated by malice and ill will toward Plaintiff Reges and other similarly situated employees, and Defendants' actions were taken with reckless and callous indifference to the statutorily protected rights of Plaintiff Reges and other similarly situated employees.

149.    As a proximate result of Defendant Cracker Barrel's unlawful acts and/or omissions, including, but not limited to, those described herein, Plaintiff Reges and other similarly situated employees have suffered and will continue to suffer loss of income, costs incurred due to legal expenses, and other great harm.

### IX.    Factual Allegations Relating to Plaintiff Wilding

### Tip Credit Violation

150.    On May 16, 2013, Plaintiff Wilding was hired as a server at the Coventry location.

151.    From her date of hire until 2017, Plaintiff Wilding worked twenty-five (25) to thirty (30) hour per week.

152.    From 2017 until her termination, Plaintiff Wilding worked twenty (20) hours per week.

153.    Throughout her employment, Plaintiff Wilding was compensated by Defendant Cracker Barrel at a sub-minimum, tip-credit wage.

154.    Throughout her employment, Plaintiff Wilding was compensated on an hourly basis at a rate between $2.89/hour and $3.89/hour plus gratuities.

155.    Throughout her employment, Plaintiff Wilding was a "tipped employee" and treated as such by Defendant Cracker Barrel under the FLSA and the RIMWA.  29 U.S.C. § 203(t); *see also Solis v. Lorraine Enterprises*, 907 F. Supp. 2d 186, 190 (D.P.R. 2012), *aff'd sub nom. Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23 (1st Cir. 2014).

156.    While Plaintiff Wilding was employed at Defendant Cracker Barrel, Plaintiff Wilding was required to perform certain non-tipped duties, including, but not limited to, wiping down chairs and tables, wiping down work stations, prep cooking for items like salads and desserts, cleaning prep area, washing dishes, emptying/filling/sanitizing ice machines and ice wells, washing/wiping down silverware, rolling silverware, change sanitizing buckets, cleaning inside of kitchen walk-in coolers, filling salt and pepper shakers, clearing dishes from tables, putting away dishes, silverware, and glassware in the kitchen, organizing sugar packets on tables, cleaning soda machines and coffee and tea urns, cleaning kitchen racks, wrapping dinner plates, pitchers, and other service items in the kitchen, and putting away food items such as salad dressings.

157.    These non-tipped duties were commonly referred to as "side work" or "closing work."

158.    These non-tipped duties were unrelated to the duties performed by Plaintiff Wilding in connection with her tipped occupation as a server.

159.    In addition, these non-tipped duties were not performed contemporaneously with direct customer service duties performed by Plaintiff Wilding or for a reasonable time immediately before or after performance of direct customer service duties performed by her.

160.    Defendant Cracker Barrel required Plaintiff Wilding to perform non-tipped duties before, during, and after customers were present at the Coventry location.

161.    During each work shift, at least one (1) employee was scheduled to be a so-called "closer," which required such employees to remain at the restaurant at least between 1 and 1 ½ hours after the Coventry location closed to customers and perform non-tipped duties as detailed above.

162.    On several occasions during her employment, Plaintiff Wilding was the "closer" for her work shift and performed non-tipped duties as the "closer."

163.    Defendant Cracker Barrel required Plaintiff Wilding to perform non-tipped duties and only compensated her for such work at the sub-minimum hourly rate between $2.89/hour and $3.89/hour.

164.    The FLSA and the RIMWA require employers to pay their employees at the minimum wage for all hours worked. 29 U.S.C. §206(a); R.I.G.L. §28-12-3.

165.    Throughout Plaintiff Wilding's employment, Defendant Cracker Barrel failed to pay Plaintiff Wilding and other similarly situated employees at the minimum wage for all non-tipped duties performed as required by the FLSA and the RIMWA.

### Failure to Pay For All Hours Worked

166.    During her employment, Plaintiff Wilding worked scheduled shifts throughout various work weeks.

167.    On several occasions during these shifts, Plaintiff Wilding and other similarly situated employees performed work after the end of their scheduled shifts.

168.    For example, despite the fact that Plaintiff Wilding's shift was scheduled to end at 2:00 p.m., she continued to perform tipped and non-tipped work at Defendant Cracker Barrel until 3:00 p.m.

169.    This occurred between 1-2 shifts per week.

170.    Defendant Cracker Barrel utilizes a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work.

171.    During these shifts when Plaintiff Wilding and other similarly situated employees performed worked after the end of their scheduled shifts, the shift managers would clock them out of work at the end of their scheduled shifts instead of the actual time they stopped working.

172.    Accordingly, Plaintiff Wilding and other similarly situated employees were not fully compensated for all hours worked.

173.    In sum, Defendant Cracker Barrel's policy, procedure, and practice of clocking out employees prior to the time they stopped performing work resulted in the failure to compensate its employees properly for all the time they have actually worked, including overtime hours.

174.    Defendant Cracker Barrel's failure to pay this unpaid time has resulted in Plaintiff Wilding and other similarly situated employees being regularly denied proper compensation under the FLSA and the RIMWA.

175.    Throughout Plaintiff Wilding's employment as a server, she was paid a sub-minimum wage for every hour worked.  Thus, during each workweek in which Defendant Cracker Barrel did not pay her for all hours worked due to being clocked out early, Plaintiff Wilding's regular rate of pay fell below the requisite federal minimum wage and the requisite Rhode Island

state minimum wage.  Because the amount Plaintiff Wilding was paid during each of those workweeks divided by the number of hours she actually worked resulted in an amount less than the statutory requirement, Defendant Cracker Barrel violated the minimum wage requirements.

176.   During those workweeks and others, Defendant Cracker Barrel's practice of clocking employees out early caused Plaintiff Wilding and other similarly-situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over forty (40) in a single workweek).

**<u>Workplace Discrimination/Wrongful Termination</u>**

177.   On or about March 16, 2020, Plaintiff Wilding was furloughed from her position at Defendant Cracker Barrel due to the COVID-19 pandemic.

178.   In September/October, 2020, Plaintiff Wilding was contacted by Sandy Rush, her manager at the Coventry location.

179.   During this conversation, Plaintiff Wilding was told that Defendant Cracker Barrel was seeking employees to return to work at the Coventry location.

180.   However, Ms. Rush never informed Plaintiff Wilding about her return to work date and never provided Plaintiff Wilding a work schedule.

181.   In October, 2020, Plaintiff Wilding was contacted by Scott McShane, the General Manager of the Coventry location.

182.   During this conversation, Plaintiff Wilding was told that, upon her return to work, she was expected to prepare and cook food, perform all host/hostess duties, wash dishes and handle all take-out orders in addition to performing her regular server duties and any "side work" or "closing work."

183.    Mr. McShane told Plaintiff Wilding that she would only be paid at the sub-minimum, tip-credit hourly rate for all work performed, including the work unrelated to her server duties.

184.    Plaintiff Wilding refused to return to work under these working conditions.

185.    In addition, Plaintiff Wilding informed Mr. McShane that due to her underlying medical conditions, including Psoriasis and Hidradenitis Suppurativa, she was prescribed Humira, which suppresses her immune system.

186.    She told Mr. McShane that due to her medical conditions and prescription medication she was unable to return to work at that time because of the COVID-19 pandemic.

187.    Thus, at all relevant times, Defendant Cracker Barrel was aware that Plaintiff Wilding suffered from disabilities or regarded Plaintiff Wilding as being disabled.

188.    Defendant Cracker Barrel failed and/or refused to engage in an open and ongoing dialogue with Plaintiff Wilding to determine a reasonable workplace accommodation.

189.    As a result, Defendants failed and/or refused to provide the Plaintiff a reasonable accommodation for her disabilities in the form of a leave of absence.

190.    In October, 2020, Plaintiff Wilding received a letter from Defendant Cracker Barrel terminating her employment.

191.    Plaintiff Wilding was terminated because she refused to violate or assist in violating the FLSA and RIMWA as well as related federal and state regulations and rules.

192.    Plaintiff Wilding was terminated due to her disabilities or perceived disabilities and/or because of her need for a reasonable accommodation in the form of a leave of absence.

193.    By terminating Plaintiff Wilding, Defendant Cracker Barrel discriminated and retaliated against Plaintiff Wilding in violation of the RIWPA and the RICRA.

194.     The Defendants' unlawful actions and/or omissions are in violation of the RIWPA and the RICRA, and were motivated by malice and ill will toward Plaintiff Wilding and other similarly situated employees, and Defendants' actions were taken with reckless and callous indifference to the statutorily protected rights of Plaintiff Wilding and other similarly situated employees.

195.     As a proximate result of Defendant Cracker Barrel's unlawful acts and/or omissions, including, but not limited to, those described herein, Plaintiff Wilding and other similarly situated employees have suffered and will continue to suffer loss of income, costs incurred due to legal expenses, and other great harm.

## X.      FLSA/RIMWA Class and Collective Action Allegations

196.     The Plaintiffs bring this FLSA Collective Action pursuant to 29 U.S.C. 216(b) and this RIMWA Class Action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all those similarly situated.

197.     The FLSA Collective Action shall be maintained as an opt-in collective action as required by the FLSA.

198.     The RIMWA Class Action shall be maintained as an opt-out class action in accordance with Fed. R. Civ. P. 23.

199.     The FLSA/RIMWA class/collective action persons, whom the Plaintiffs seek to represent, is defined as any and all individuals who were, are, or will be employed by Defendant Cracker Barrel in the State of Rhode Island as servers, waitresses, waiters, bartenders, bar backs, runners or other similarly situated employees during the applicable statutes of limitations, who have (1) not been compensated at the minimum wage for all non-tipped duties performed, and (2) not been compensated at the minimum or sub-minimum wage for all hours worked, including overtime hours.

The Plaintiffs and the class/collective action persons have had substantially similar job requirements, duties, and business activities, and were paid in the same manner, and are and have been subject to Defendant Cracker Barrel's decision, policy, plan, and common policies, programs, practices, procedures, protocols, routines, and rules wrongfully failing and/or refusing to properly compensate them.

200.     The Plaintiffs are members of the class they seek to represent and the claims of the Plaintiffs stated herein are essentially the same as those of the other class and collective action persons.

201.     There are questions of law and fact common to the class, and these questions predominate over any questions affecting only individual class members.

202.     Questions of law and fact common to the class as a whole include, but are not limited to, the following:

a.   whether Defendant Cracker Barrel failed and continues to fail to provide the Plaintiffs and other similarly situated employees the proper amount of wages, including compensating the Plaintiffs and similarly situated employees at the minimum wage for all non-tipped duties performed in various workweeks and compensating such employees for all hours worked (including overtime), in violation of the FLSA and the RIMWA;

b.   whether Defendant Cracker Barrel's policies and practices relative to its failure to provide the Plaintiffs and other similarly situated employees the proper amount of wages violate the applicable provisions of the FLSA and/or the RIMWA.

c.   whether Defendant Cracker Barrel's failure to pay the Plaintiffs and other similarly situated employees the proper amount of wages, including compensating the Plaintiffs and similarly situated employees at the minimum wage for all non-tipped duties performed in various workweeks and compensating such employees for all hours worked (including

overtime), was an innocent mistake or willful within the meaning of the FLSA and the RIMWA;

    d.   whether Defendant Cracker Barrel acted in good faith in failing to pay the Plaintiffs and other similarly situated employees the proper amount of wages, including compensating the Plaintiffs and similarly situated employees at the minimum wage for all non-tipped duties performed in various workweeks and compensating such employees for all hours worked (including overtime);

    e.   whether Defendant Cracker Barrel has a history of previous violations for failing to pay the proper amount of wages, including compensating the Plaintiffs and similarly situated employees at the minimum wage for all non-tipped duties performed in various workweeks and compensating such employees for all hours worked (including overtime), in violation of the FLSA and/or the RIMWA; and,

    f.   whether the Plaintiffs and other similarly situated employees have suffered damages as a result of Defendant Cracker Barrel's wrongful acts and/or omissions.

203.    A Class and/Collective Action is also fair and efficient means to litigate this matter because prosecution of separate actions by individual members of the class would create a risk of differing adjudications with respect to such individual members of the class, which as a practical matter, may be dispositive of the interests of other members to the adjudication, or substantially impair or impede their ability to protect their interests.

204.    The Plaintiffs anticipate that there will be little difficulty in the management of this litigation.  This litigation presents a wage claim of a type that has often been previously prosecuted on a class and/or collective action basis, and in the manner of identifying the members of the class

and providing any monetary relief to them can simply be effectuated from a review of Defendant Cracker Barrel's books and records.

205.     While the exact number and identities of members of the class are unknown at this time, and can only be ascertained through appropriate discovery, the Plaintiffs believe that approximately 80-120 putative class members have worked as servers, waitresses, waiters, bartenders, bar backs, runners or other similarly situated employees during the applicable statutes of limitations, without receiving appropriate compensation for work performed as required by federal and state law.

206.     As representative parties of the class, the Plaintiffs' claims are typical of the claims of the class.  The Plaintiffs have not been properly compensated for all hours they performed work for the benefit of Defendant Cracker Barrel.  The Plaintiffs have been subject to the wrongful policies, practices, and procedures of Defendant Cracker Barrel.  The Plaintiffs have suffered harm as a result thereof.

207.     The Plaintiffs will fairly and adequately represent and protect the interests of the members of the class.  The Plaintiffs have retained counsel competent and experienced in collective actions, class actions, wage claims, including FLSA and RIMWA claims, and other employment law litigation.

208.     Class certification is appropriate pursuant to the FLSA and RIMWA because Defendant Cracker Barrel have violated the statutory rights generally applicable to members of the class.

209.     The names and addresses of the FLSA/RIMWA Class/Collective Action persons are available from Defendant Cracker Barrel.  To the extent required by law, notice will be provided to such individuals via first class mail and/or by the use of techniques in a form of notice that has been

used customarily in the FLSA/RIMWA class/collective actions, subject to this Honorable Court's approval.

## XI.   Claims for Relief

210.    The Plaintiffs, on behalf of themselves and others similarly-situated, incorporates the allegations contained in ¶¶1 through 209 above in the counts set forth below.

### Count One
### Violation of the FLSA
### [Tip Credit Violation—Collective Action]

211.    During all relevant time periods, Defendant Cracker Barrel has been and continues to be an "employer" within the meaning of the FLSA.

212.    During all relevant time periods, Defendant Cracker Barrel employed and continues to employ the Plaintiffs and putative class members within the definition of the FLSA.

213.    The Plaintiffs consent to sue in this action pursuant to the FLSA.

214.    The FLSA requires each covered employer, such as Defendant Cracker Barrel, to compensate all employees at the minimum wage for all non-tipped duties performed in any workweek.

215.    The Plaintiffs and other similarly situated employees were and are paid hourly in various workweeks.

216.    The Plaintiffs and other similarly situated employees are entitled to be paid at the minimum wage rate for all non-tipped duties performed in any workweek

217.    During all relevant time periods, Defendant Cracker Barrel maintained a policy and practice of failing and refusing to compensate their employees at the minimum wage rate for all non-tipped duties performed in various workweeks.

218.     As a result of Defendant Cracker Barrel's failure and/or refusal to compensate its employees, including the Plaintiffs and other similarly situated employees, at the minimum wage rate for all non-tipped duties performed in various workweeks, Defendant Cracker Barrel has violated and continues to violate the FLSA.

219.     Defendant Cracker Barrel's conduct as alleged herein constitutes a willful violation of the FLSA.

220.     The Plaintiffs, on behalf of themselves and other similarly situated employees, are entitled to damages in the amount of their respective unpaid compensation, plus liquidated damages as provided by the FLSA and other such legal and equitable relief as this Honorable Court deems just and proper, for which they are entitled to relief pursuant to 29 U.S.C. §216(b).

**Count Two**
**Violation of the FLSA**
**[Unpaid Regular & Overtime Wages—Collective Action]**

221.     During all relevant time periods, Defendant Cracker Barrel has been and continues to be an "employer" within the meaning of the FLSA.

222.     During all relevant time periods, Defendant Cracker Barrel employed and continues to employ the Plaintiffs and putative class members within the definition of the FLSA.

223.     The Plaintiffs consent to sue in this action pursuant to the FLSA.

224.     The FLSA requires that employees are paid for all hours worked and at one and one-half times their "regular rate" for all hours worked in excess of 40 hours in a workweek.  The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him or her in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

225.     Defendant Cracker Barrel violated the FLSA by failing to pay the Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek, including overtime hours worked.

226.      Specifically, as discussed above, Defendant Cracker Barrel unlawfully clocked out its employees while those employees continued to perform work, which forced employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

227.     Defendant Cracker Barrel's conduct as alleged herein constitutes a willful violation of the FLSA.

228.     The Plaintiffs, on behalf of themselves and other similarly situated employees, are entitled to damages in the amount of their respective unpaid compensation, plus liquidated damages as provided by the FLSA and other such legal and equitable relief as this Honorable Court deems just and proper, for which they are entitled to relief pursuant to 29 U.S.C. §216(b).

**Count Three**
**Violation of the RIMWA**
**[Tip Credit Violation—Class Action]**

229.     During all relevant time periods, Defendant Cracker Barrel has been and continues to be an "employer" within the meaning of the RIMWA.

230.     During all relevant time periods, Defendant Cracker Barrel employed and continues to employ the Plaintiffs and putative class members within the definition of the RIMWA.

231.     The Plaintiffs consent to sue in this action pursuant to the RIMWA.

232.     The RIMWA requires each covered employer, such as Defendant Cracker Barrel, to compensate all employees at the minimum wage for all non-tipped duties performed in any workweek.

233.     The Plaintiffs and other similarly situated employees were and are paid hourly in various workweeks.

234.     The Plaintiffs and other similarly situated employees are entitled to be paid at the minimum wage rate for all non-tipped duties performed in any workweek

235.     During all relevant time periods, Defendant Cracker Barrel maintained a policy and practice of failing and refusing to compensate its employees at the minimum wage rate for all non-tipped duties performed in various workweeks.

236.     As a result of Defendant Cracker Barrel's failure and/or refusal to compensate its employees, including the Plaintiffs and other similarly situated employees, at the minimum wage rate for all non-tipped duties performed in various workweeks, Defendant Cracker Barrel has violated and continues to violate the RIMWA.

237.     Defendant Cracker Barrel's conduct as alleged herein constitutes a willful violation of the RIMWA.

238.     The Plaintiffs, on behalf of themselves and other similarly situated employees, are entitled to damages in the amount of their respective unpaid compensation, plus liquidated damages as provided by the RIMWA, and other such legal and equitable relief as this Honorable Court deems just and proper, for which they are entitled to relief pursuant to R.I.G.L. §28-14-19.2.

## Count Four
## Violation of the RIMWA
### [Unpaid Regular & Overtime Wages—Collective Action]

239.     During all relevant time periods, Defendant Cracker Barrel has been and continues to be an "employer" within the meaning of the RIMWA.

240.     During all relevant time periods, Defendant Cracker Barrel employed and continues to employ the Plaintiffs and putative class members within the definition of the RIMWA.

241.    The Plaintiffs consent to sue in this action pursuant to the RIMWA.

242.    The RIMWA requires that employees are paid for all hours worked and at one and one-half times their "regular rate" for all hours worked in excess of 40 hours in a workweek.  The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him or her in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

243.    The Defendants violated the RIMWA by failing to pay the Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek, including overtime hours worked.

244.    Specifically, as discussed above, the Defendants unlawfully clocked out its employees while those employees continued to perform work, which forced employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

245.    Defendant Cracker Barrel's conduct as alleged herein constitutes a willful violation of the RIMWA.

246.    The Plaintiffs, on behalf of themselves and other similarly situated employees, are entitled to damages in the amount of their respective unpaid compensation, plus liquidated damages as provided by the FLSA and other such legal and equitable relief as this Honorable Court deems just and proper, for which they are entitled to relief pursuant to R.I.G.L. §28-14-19.2.

<u>**Count Five**</u>
<u>**Violation of the FLSA**</u>
**[Wrongful Discharge & Retaliation—Plaintiff Loftus]**

247.    Plaintiff Loftus complained to his direct supervisor about being improperly compensated in violation of the FLSA.

248.    As a direct and proximate result of his complaint, Plaintiff Loftus was terminated from his employment at Cracker Barrel.

249.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the FLSA by subjecting Plaintiff Loftus to workplace retaliation and terminating his employment for reporting wage violations, thereby causing Plaintiff Loftus to suffer damages as aforesaid, for which he is entitled to relief pursuant to 29 U.S.C. §216(b).

**Count Six**
**Violation of the RIWA**
**[Wrongful Discharge & Retaliation—Plaintiff Loftus]**

250.    Plaintiff Loftus complained to his direct supervisor about the being improperly compensated in violation of the RIWA.

251.    As a direct and proximate result of his complaint, Plaintiff Loftus was terminated from his employment at Cracker Barrel.

252.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWA by subjecting Plaintiff Loftus to workplace retaliation and terminating his employment for reporting wage violations, thereby causing Plaintiff Loftus to suffer damages as aforesaid, for which he is entitled to relief pursuant to R.I.G.L. § 28-14-19.3.

**Count Seven**
**Violation of the RIWPA**
**[Wrongful Discharge & Retaliation—Plaintiff Loftus]**

253.    Plaintiff Loftus complained to his direct supervisor about the being improperly compensated in violation of the FLSA, the RIWA, and related federal and state regulations and rules.

254.    Plaintiff Loftus refused to engage in unlawful activities in violation of the FLSA, the RIWA, and related federal and state regulations and rules.

255.    As a direct and proximate result of his complaint and/or refusal to engage in unlawful activities, Plaintiff Loftus was terminated from his employment at Cracker Barrel.

256.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWPA by subjecting Plaintiff Loftus to workplace retaliation and terminating his employment for reporting wage violations and/or refusing to engage in unlawful activities, thereby causing Plaintiff Loftus to suffer damages as aforesaid, for which he is entitled to relief pursuant to R.I.G.L. §§28-50-4 and 5.

### Count Eight
### Violation of the RIWPA
### [Wrongful Discharge & Retaliation—Plaintiff Nelson]

257.    Plaintiff Nelson refused to engage in unlawful activities in violation of the FLSA, the RIWA, and related federal and state regulations and rules.

258.    As a direct and proximate result of her refusal to engage in unlawful activities, Plaintiff Nelson was terminated from her employment at Cracker Barrel.

259.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWPA by subjecting Plaintiff Nelson to workplace retaliation and terminating her employment for refusing to engage in unlawful activities, thereby causing Plaintiff Nelson to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I.G.L. §§28-50-4 and 5.

### Count Nine
### Violation of the RICRA
### [Discrimination & Wrongful Discharge—Plaintiff Nelson]

260.     Defendants, by their individual and/or concerted acts or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against Plaintiff Nelson in employment on account of her disability and/or perceived disability in violation of the RICRA, causing Plaintiff Nelson to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RICRA.

**Count Ten**
**Violation of the FLSA**
**[Wrongful Discharge & Retaliation—Plaintiff Reges]**

261.     Plaintiff Reges complained to her direct supervisor about being improperly compensated in violation of the FLSA.

262.     As a direct and proximate result of his complaint, Plaintiff Reges was terminated from her employment at Cracker Barrel.

263.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the FLSA by subjecting Plaintiff Reges to workplace retaliation and terminating her employment for reporting wage violations, thereby causing Plaintiff Reges to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. §216(b).

**Count Eleven**
**Violation of the RIWA**
**[Wrongful Discharge & Retaliation—Plaintiff Reges]**

264.     Plaintiff Reges complained to her direct supervisor about being improperly compensated in violation of the RIWA.

265.     As a direct and proximate result of her complaint, Plaintiff Reges was terminated from her employment at Cracker Barrel.

266.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWA by subjecting Plaintiff Reges to

workplace retaliation and terminating her employment for reporting wage violations, thereby causing Plaintiff Reges to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I.G.L. § 28-14-19.3.

**Count Twelve**
**Violation of the RIWPA**
**[Wrongful Discharge & Retaliation—Plaintiff Reges]**

267.    Plaintiff Reges complained to her direct supervisor about being improperly compensated in violation of the FLSA, the RIWA, and related federal and state regulations and rules.

268.    Plaintiff Reges refused to engage in unlawful activities in violation of the FLSA, the RIWA, and related federal and state regulations and rules.

269.    As a direct and proximate result of her complaint and/or refusal to engage in unlawful activities, Plaintiff Reges was terminated from her employment at Cracker Barrel.

270.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWPA by subjecting Plaintiff Reges to workplace retaliation and terminating her employment for reporting wage violations and/or refusing to engage in unlawful activities, thereby causing Plaintiff Reges to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I.G.L. §§28-50-4 and 5.

**Count Thirteen**
**Violation of the RICRA**
**[Discrimination & Wrongful Discharge—Plaintiff Reges]**

271.    Defendants, by their individual and/or concerted acts or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against Plaintiff Reges in employment on account of her disability and/or perceived disability in violation of the RICRA,

causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RICRA.

### Count Fourteen
### Violation of the RIWPA
### [Wrongful Discharge & Retaliation—Plaintiff Wilding]

272.     Plaintiff Wilding refused to engage in unlawful activities in violation of the FLSA, the RIWA, and related federal and state regulations and rules.

273.     As a direct and proximate result of her refusal to engage in unlawful activities, Plaintiff Wilding was terminated from her employment at Cracker Barrel.

274.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWPA by subjecting Plaintiff Wilding to workplace retaliation and terminating her employment for refusing to engage in unlawful activities, thereby causing Plaintiff Wilding to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I.G.L. §§28-50-4 and 5.

### Count Fifteen
### Violation of the RICRA
### [Discrimination & Wrongful Discharge—Plaintiff Wilding]

275.     Defendants, by their individual and/or concerted acts or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against Plaintiff Wilding in employment on account of her disability and/or perceived disability in violation of the RICRA, causing Plaintiff Wilding to suffer damages as aforesaid, and thereby deprived Plaintiff Wilding of rights secured under the RICRA.

### XII.    Prayers for Relief

**WHEREFORE,** the Plaintiffs, on behalf of themselves and other similarly situated employees, respectfully pray for the following relief:

1.       a determination that this is a proper collective action pursuant to 29 U.S.C. 216(b);

2.       a determination that this is a proper class action pursuant to Fed. R. Civ. P. 23;

3.       a prompt issuance of notice pursuant to 29 U.S.C. §216(b), to all similarly situated members of the FLSA opt-in collective class apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. §216(b), and equitable tolling of the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. §216(b);

4.       a designation of the Plaintiffs as the representatives of the class;

5.       a declaratory judgment declaring that Defendant Cracker Barrel willfully violated the wage requirements under the FLSA and the RIMWA in the manner complained of herein;

6.       in the alternative, a declaratory judgment declaring that Defendant Cracker Barrel violated the wage requirements under the FLSA and the RIMWA in the manner complained of herein;

7.       a declaratory judgment declaring that Defendant Cracker Barrel unlawfully retaliated and discriminated against the Plaintiffs in violation of the FLSA, the RIWA, the RIWPA, and the RICRA;

8.       enjoin and permanently restrain Defendant Cracker Barrel from violating the FLSA the RIMWA, the RIWA, the RIWPA, and the RICRA;

9.       an award of actual damages pursuant to R.I.G.L. §28-14-19.3;

10.      an award of back pay, including incremental increases, and other benefits pursuant to R.I.G.L. §28-50-5 and R.I.G.L. §42-112-2;

11. an award of compensatory and exemplary damages pursuant to R.I.G.L. §42-112-2;

12. an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b), R.I.G.L. §28-14-19.2, R.I.G.L. §28-14-19.3, R.I.G.L. §28-50-5, and R.I.G.L. §42-112-2;

13. an award of prejudgment statutory interest;

14. an award of liquidated damages pursuant to 29 U.S.C. §216(b) and R.I.G.L. §28-14-19.2; and,

15. such other and further relief as this Honorable Court deems just and proper.

## XIII.   Demand for Jury Trial

The Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury on all counts so triable.

## XIV.   Designation of Trial Counsel

The Plaintiffs, individually and on behalf of all others similarly situated, hereby designate V. Edward Formisano, Esq. and Michael D. Pushee, Esq. as trial counsel.

> Plaintiffs,
> individually and on behalf of all others similarly situated,
> By their attorneys,
> **FORMISANO & COMPANY, P.C.**
>
> /s/ V. Edward Formisano
> V. Edward Formisano (#5512)
>
> /s/ Michael D. Pushee
> Michael D. Pushee (#6948)
> 100 Midway Place, Suite 1
> Cranston, RI 02920-5707
> (401) 944-9691
> (401) 944-9695 (facsimile)
> edf@formisanoandcompany.com
> mpushee@formisanoandcompany.com

## <u>CERTIFICATION</u>

I hereby certify that on the 7th day of January, 2021, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

/s/ V. Edward Formisano

44